THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

TINA RENEE VIRGIL,

    Plaintiff,

v.                                                                Case No. 22-CV-9

JOSHUA KAUL and ERIC WILSON,

    Defendants.

## COMPLAINT

Plaintiff, Tina Renee Virgil, by her attorneys, Pines Bach LLP, as a complaint against Defendants Joshua Kaul and Eric Wilson, alleges as follows:

### INTRODUCTION

1. This action sets forth a claim for compensatory and punitive damages and attorneys' costs and fees, brought pursuant to 42 U.S.C. §§ 1983 and 1988, for violations by the Defendants, Joshua Kaul and Eric Wilson, while acting in their individual capacities under the color of state law, of the Plaintiff Tina Renee Virgil's rights protected by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to be free from race and sex discrimination.

### JURISDICTION & VENUE

2. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, which provides for original district court jurisdiction over cases presenting federal questions, and the cause of action arises under the United States Constitution and 42 U.S.C. § 1983.

3. Venue in this district is proper under 28 U.S.C. § 1391(b) because this is the judicial district in which all the events and omissions giving rise to these claims occurred.

## THE PARTIES

4. The Plaintiff, Tina Renee Virgil, (hereinafter "Virgil") is an adult citizen of the State of Wisconsin, who resides in Sun Prairie, Wisconsin. At all times relevant to this complaint, she was the Administrator of the Division of Law Enforcement Services (hereinafter "DLES") of the Wisconsin Department of Justice (hereinafter "DOJ").

5. Defendant, Joshua Kaul (hereinafter "Kaul") is and at all times relevant to this Complaint was the Attorney General of the State of Wisconsin who is sued in his individual capacity. Kaul is a "person" within the meaning of 42 U.S.C. § 1983, who was acting under color of state law at all times relevant to this Complaint.

6. Defendant, Eric Wilson (hereinafter "Wilson"), is and at all times relevant to this Complaint was, the Deputy Attorney General of the State of Wisconsin who is sued in his individual capacity. Wilson is a "person" within the meaning of 42 U.S.C. § 1983, who was acting under color of state law at all times relevant to this Complaint.

## STATEMENT OF FACTS

7. Virgil has served under five Attorneys General in a variety of roles during the past 29 years at the DOJ.

8. On December 19, 2021, after having been unanimously recommended by three law enforcement experts outside of the DOJ, Virgil was appointed the Administrator of the Division of Criminal Investigation (hereinafter "DCI"). Prior to this appointment, Virgil

served for almost three years as the Administrator of the DLES. She was appointed to the DLES position by newly elected Attorney General Kaul on January 6, 2019.

9. Virgil earned several promotions and executive-level appointments during her 29-year tenure with DOJ. Virgil had been designated by Attorney General Brad Schimel in 2016 as the Director of the newly created Bureau of Special Investigations overseeing critical-incident response for officer-involved shootings for the DCI. She also held the position of State Fire Marshal.

10. Virgil also served as Executive Director of the Office of Crime Victim Services having been appointed by Attorney General Peg Lautenschlager in 2007 and continued the appointment during the transition into Attorney General J.B. Van Hollen's administration.

11. In addition, Virgil is a sworn law enforcement officer with Wisconsin's State Capitol Police Department.

12. Virgil has been active in a variety of statewide and national initiatives, including serving as the Chapter President for the National Organization of Black Law Enforcement Executives ("NOBLE"), a member of the State Council on Alcohol and Other Drug Abuse, the National Court Appointed Special Advocates Association, and the National Association of Women in Law Enforcement Executives.

13. Virgil received her Bachelor of Science Degree, double-majoring in Criminal Justice and Psychology, from Edgewood College and graduated from the Northwestern University Center for Public Safety Police School of Staff and Command. She is also a graduate of the Wisconsin Command College.

14. In 2021, Virgil was awarded the 2021 Wisconsin Women in Government Legacy Award.

15. As of January 6, 2019, Virgil, a sworn law enforcement officer, was a highly experienced administrator in Wisconsin state government and one of the only African-American women in state government service to have achieved the high level of administrative responsibilities that she had successfully undertaken.

16. Despite Virgil's qualifications and experience, when she was appointed to the position of Administrator of the DLES in the DOJ by Kaul, because of a decision by Kaul, she was paid less than the previous white male incumbent in that position.

17. At the time of her appointment, Virgil's salary was less than all other DOJ division administrators, all of whom were white.

18. Virgil also had more years of experience working at the DOJ than any other then-current division administrator, all of whom were white and was also paid less than some deputy administrators and executive directors who are white and serve in positions of a lower rank than Virgil.

19. All of those facts were known to Kaul at the time he set Virgil's salary in 2019. Virgil brought those disparities to Kaul's attention, and he did nothing to correct them.

20. In fact, he did the opposite: when a position became vacant in the Division of Management Services in the DOJ, a smaller and less complex division than the DLES, Kaul appointed a white woman with much less experience and training than Virgil has and set the white woman's salary higher than Virgil's.

4

21. Immediately after starting in her position as the Administrator of the DLES, Virgil began, based on Virgil's race and gender, to suffer from harassment by Brian O'Keefe, ("O'Keefe"), then Administrator of the Division of Criminal Investigation ("DCI") of the Wisconsin DOJ and harassment by Wilson, the Deputy Attorney General, both of whom are white males.

22. Wilson was the supervisor of both O'Keefe and Virgil and Kaul was Wilson's supervisor.

23. O'Keefe, among other actions, did the following:

- secretly recorded Virgil's telephone calls in violation of the Department of Justice Rules of Employee Misconduct for the Division of Criminal Investigation
- filed an internal complaint against Virgil, purportedly on behalf of another employee, based on O'Keefe's secretly recorded conversations

24. Kaul and Wilson were aware of O'Keefe's harassment of Virgil, were in a position to stop the harassment, but instead supported the harassment by acting with deliberate indifference to it. Moreover, Kaul and Wilson tacitly supported O'Keefe's harassment of Virgil by authorizing a disciplinary investigation to be conducted against her based on the secretly recorded phone conversations, where any discipline would have been in violation of Wis Stat. § 230.86.

25. Yet, when O'Keefe, a white male, was accused of having accepted a $1,000-plus gift from a patron who paid for a meal for DOJ investigators and staff when they were in Barron County investigating the Jayme Closs case, O'Keefe was never even

5

investigated for potential discipline. O'Keefe was also never investigated for secretly recording the telephone calls with Virgil, which were made in violation of policy.

26. Wilson, himself, engaged in a pattern of discriminatory behavior against Virgil based on her gender and race. For example, he:

- asked Virgil "How did you get here? Who was your mentor?" suggesting that Virgil could not have achieved success in state government on her own merit.
- raised his voice and berated Virgil, conduct that he did not engage in when addressing white employees.
- removed a nine-year female employee from Virgil's supervisory chain of command based on a rumor that Virgil had a relationship with the female employee, which was absolutely false, but upon being made aware of the rumor about white employees engaged in inappropriate sexual relations with subordinates, Wilson took no such action.
- routinely took control of the decision making within DLES by micromanaging Virgil's work, contacting her direct reports without her knowledge, and undermining her decisions, actions which he did not take against white or male division administrators.
- made derogatory statements to Virgil, such as, "you are just full of drama," a common stereotype about women, when she did not agree with a position he had taken on a matter and made no such comments about white or male employees.
- suggested that Virgil had never ridden in a luxury car such as the one he owned, implying that African-Americans would not have such cars.
- was determined by an outside investigation conducted at the request of the DOJ which concluded the Wilson acted differentially toward some women in the DOJ.
- suggested Virgil and her family supported Chicago Mayor Lightfoot because of Lightfoot's "alternative lifestyle." Lightfoot is an openly gay, black woman.

27. Kaul, as well, in addition to being aware of and deliberately indifferent to Wilson's discriminatory behavior toward Virgil, directly engaged in discriminatory behavior toward Virgil. For example:

6

- sworn law enforcement officers, like those of Virgil's level of experience and training, are expected to be members of various professional associations as part of their responsibilities, including, but not limited to, the Badger State Sheriff's and the Wisconsin Police Chief's Association.
- Kaul, with Wilson's concurrence, authorized the DOJ to pay for nine such memberships for both O'Keefe and for DCI Deputy Administrator Mike Sasse, both of whom are white males.
- Kaul also authorized DOJ to pay for association memberships for Mike Steffes, who was the deputy administrator of the Division of Law Enforcement Services, who directly reported to Virgil.
- Kaul refused to authorize DOJ to pay for Virgil's association memberships and Wilson told Virgil it would be an embarrassment for Kaul to pay for Virgil's memberships. Kaul was aware of Wilson's comment.
- O'Keefe, Sasse, and Steffes are all white males.
- Kaul also refused to allow DOJ to sponsor Virgil's law enforcement credentials while she served as the DLES Administrator and was on leave from her sworn civil service position within the DCI, which harmed Virgil by negatively affecting her pension and protected status, and by requiring her to take part-time employment with Capitol Police in order to maintain her sworn law enforcement status and credentials.

**Deprivation of Equal Protection**
**U.S. CONST. Amend. XIV**
**(42 U.S.C. § 1983)**
**§ 1983 Violation**

28. Incorporates and realleges the facts alleged in Paragraphs 1 through 27 above.

29. Wilson, while acting under color of state law, discriminated against Virgil on the basis of her sex and race, in violation of Virgil's rights under the Equal Protection Clause of the 14th Amendment to the United States Constitution, and further harassed and discriminated against Virgil on the basis of her sex and race, by remaining indifferent to O'Keefe's discrimination against Virgil on the basis of her race and sex and indifferent to the wage disparity between Virgil and other white females and white

7

males as described above, which as her supervisor Wilson was aware of and failed to take any action to remedy or attempt to such disparities.

30. Kaul, while acting under color of state law, discriminated against Virgil on the basis of her sex and race, in violation of Virgil's rights under the Equal Protection Clause of the 14th Amendment to the United States Constitution, and further discriminated against Virgil on the basis of her sex and race and by remaining indifferent to Wilson's and O'Keefe's discrimination against Virgil on the basis of her race and sex.

31. There was no rational, let alone important, justification for such discrimination by either Kaul or Wilson or for Kaul's indifference to Wilson's discriminatory conduct.

32. Kaul and Wilson, by their conduct as alleged hereinabove, each caused Virgil to suffer damage to her reputation, pecuniary loss, and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tina Renee Virgil, hereby demands judgment, individually, against the Defendants Joshua Kaul and Eric Wilson for:

A. Compensatory damages.

B. Punitive damages.

C. Pursuant to 42 U.S.C. § 1988, the expenses of this action, including reasonable attorneys' fees.

D. Such other relief as the court may deem just and proper.

Respectfully submitted this 5th day of January 2022.

                                               PINES BACH LLP

                                               */s/ Lester A. Pines*                .
                                               Lester A. Pines, SBN 1016543

                                               *Attorneys for Plaintiff Tina Renee Virgil*

<u>Mailing Address:</u>
122 West Washington Ave.
Suite 900
Madison, WI 53703
(608) 251-0101 (telephone)
(608) 251-2883 (facsimile)
lpines@pinesbach.com